**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

Case No. 1:24-cv-21104-RUIZ/LOUIS

BENESSERE INVESTMENT GROUP, LLC,
a Florida limited liability company, and
ARC GLOBAL INVESTMENTS II LLC, a
Delaware limited liability company,

        Plaintiffs,

v.

ERIC SWIDER, an individual,
ALEXANDER CANO, an individual, and
RENATUS ADVISORS, LLC, a
Delaware limited liability company,

        Defendants.
_____/

## AMENDED COMPLAINT

    Plaintiffs Benessere Investment Group, LLC and ARC Global Investments II LLC sue

Defendants Eric Swider, Alexander Cano, and Renatus Advisors, LLC, and allege as follows:

### Nature of the Action

    1.    In an audacious scheme to seize control of and enlarge their holdings in a publicly-

traded company poised to merge with Trump Media & Technology Group Corp., Defendants

Swider, Cano, and Renatus, and other co-conspirators stole access to Plaintiffs' computer systems

and files and used the stolen information to attack Benessere and ARC II managing member,

Patrick Orlando. They aimed to discredit Orlando and convince ARC II investors to disregard its

managing member (and their own self-interest) and vote in favor of a merger on terms that

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

promised to dilute their ownership percentages. They since used this information to continue to wrongfully influence ARC II's members against Orlando.

2.     This action seeks to stop these outrageous acts through an injunction prohibiting the use of the stolen information, and seeks damages for the harm that they have already caused.

### The Parties

3.     Plaintiff Benessere Investment Group, LLC ("**Benessere**") is a Florida limited liability company conducting business in Miami-Dade County. Benessere is substantially owned and managed by Patrick Orlando ("**Orlando**").

4.     Plaintiff ARC Global Investments II, LLC ("**ARC II**") is a Delaware limited liability company conducting business in Miami-Dade County. Patrick Orlando is the managing member of ARC II.

5.     Defendant Renatus Advisors, LLC ("**Renatus**") is a Delaware limited liability company conducting business in Miami-Dade County.

6.     Defendant Eric Swider ("**Swider**") is an individual residing in Puerto Rico. Eric Swider is currently the Chief Executive Officer and a Director Trump Media & Technology Group Corp. ("**Trump Media**"), which is the entity resulting from the merger between Trump Media and Digital World Acquisition Corp. ("**DWAC**"). Swider owns and controls Renatus.

7.     Defendant Alexander Cano ("**Cano**") is an individual residing in Miami-Dade County, Florida. Cano was the President and Secretary of DWAC prior to the merger and is currently employed as a consultant by Renatus.

### Jurisdiction and Venue

8.     This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. §

2

1367 as the state law counts arise from the same material facts as the federal question counts and are so related to the federal question counts that they form part of the same controversy.

9.     Defendants are subject to the personal jurisdiction of this Court pursuant to: (a) Florida Statutes § 48.193(1)(a), because Defendants have conducted, engaged in and carried out a business venture within the State of Florida; (b) Florida Statutes § 48.193(1)(b), because Defendants have committed tortious acts within the State of Florida; and (c) Florida Statutes § 48.193(2), because Defendants are engaged in substantial business activities within the State of Florida. In addition, this Court has jurisdiction over Cano because he resides in Miami-Dade County, Florida.

10.     Venue is proper in this district because a substantial part of the events and omissions giving rise to this action occurred in this district. 28 U.S.C. § 1391(b)(2).

<u>**General Allegations**</u>

**I.   The Parties' Business Relationships**

11.     In December 2020, DWAC was formed as a special purpose acquisition company ("**SPAC**"). Its sole purpose was to acquire an existing target company either by merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or similar business combination.

12.     SPACs raise capital to acquire the target company by completing an initial public offering ("**IPO**").

13.     SPACs are formed by "sponsors." A SPAC's sponsor generally provides or raises the initial capital to cover the SPAC's expenses. In exchange for this initial capital, the SPAC's sponsor receives a percentage interest in the SPAC via the opportunity to acquire Class B founder shares for nominal value. The remaining interest in the SPAC is held by the public in the form of units consisting of one Class A share and a fraction of a redeemable warrant.

3

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

14.     DWAC's sponsor is ARC II, which received approximately 19% of the interest in DWAC, primarily in the form of Class B Common Stock.

15.     As DWAC's sponsor, ARC II maintains a group of investors who in this case provided the seed money to enable DWAC to become publicly traded and ultimately achieve its purpose to achieve a merger.

16.     In addition to being the Managing Member of ARC II, Orlando served as DWAC's Chairman and CEO for a period of time, and as one of its directors until March 25, 2024.

17.     On or about October 20, 2021, DWAC entered into a merger agreement with DWAC Merger Sub, Inc. and Trump Media. Pursuant to the merger agreement, DWAC planned to merge with and into Trump Media, with Trump Media surviving the merger as a wholly owned subsidiary of DWAC. Upon consummation of the business combination, DWAC was to change its name to "Trump Media & Technology Group Corp."

18.     As DWAC's CEO and Managing Member of ARC II, Orlando led DWAC into a successful execution of a definitive merger agreement with Trump Media.

**II. Swider and Cano Plot a Coup d'état**

19.     Following the announcement of the DWAC/Trump Media Merger Agreement, in or around the first quarter of 2023, Swider, then a director of DWAC, devised a scheme to have Orlando ousted as DWAC's CEO. To carry out his scheme, Swider published false and misleading representations of what was occurring at DWAC to DWAC's directors and other individuals involved in DWAC's business.

20.     To garner support for his scheme, Swider offered outsized compensation to the other directors he enlisted to collude with him in exchange for supporting his coup d'état.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

21.     Swider devised this scheme to benefit his company, Renatus Advisors, and himself, as he stood to receive massive compensation previously unavailable to him.

22.     Although Swider was successful in having Orlando ousted as CEO and Chairman of DWAC, Orlando continued to be a director of DWAC and the Managing Member of ARC II, which owned approximately 19% of DWAC.

**III. Swider and Cano Hack Plaintiffs' Computer Systems**

23.     Swider wanted to take control of ARC II as well as DWAC. And to gain control of ARC II and complete his takeover of the entire DWAC enterprise, Swider sought to obtain confidential information about ARC II and its investors, which information was held by Benessere in a protected electronic storage account at Box.com (the "**Box Account**").

24.     Box.com is a website that offers password-protected storage for computer files. To get information from the Box Account, Swider enlisted the support of Cano, who had served as Orlando's assistant at Benessere until January 30, 2023, after which time Cano was no longer an assistant to Orlando or otherwise engaged by Benessere or authorized to access its files, including the Box Account.

25.     While at Benessere, Cano had credentials to access Benessere's Box Account through his Benessere email account acano@bennesrecapital.com.

26.     Benessere's Box Account stored the lifeblood of Benessere's business, as well as that of ARC II and other entities for which Benessere provides consulting services. Indeed, ARC II did not have employees or its own equipment and instead relied upon that provided by Benessere through a leasing relationship, including but not limited to storing information on the Box Account.

27.     After Cano left Benessere and Swider had assumed the role of CEO at DWAC, Swider hired Cano as his personal assistant.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

28.     Swider knew Cano had access to the Box Account and, upon information and belief, promised Cano that if he helped him monitor and access the information in the account, he would use his sway over DWAC's board to make Cano the president of DWAC—despite his lack of qualifications—and provide him with an outsized compensation package.

29.     Cano agreed to conspire with Swider, and Swider made good on his promise by causing Cano to become the president of DWAC and to receive a convertible note, which converted into 165,000 shares of DWAC's stock.  As of the time of this amended complaint, that stock is worth approximately $5 million.

30.     At some point during 2023, months after Cano had left Benessere, Orlando learned that he had been locked out of the Box Account and that Cano had seized total control of the Box Account as the administrator.

31.     Orlando thereafter demanded that Cano restore access to the Box Account, not realizing that Cano was continuing to access documents from the Box Account.

32.     It was not until December 4, 2023, that Cano finally provided Orlando access to the Box Account, albeit limited access. Later, a review of the Box Account files revealed what Swider and Cano had been doing.

33.     Since February 1, 2023, at Swider's direction, Cano has improperly and without any authorization repeatedly accessed the Box Account.

34.     Cano without authorization accessed files, including, without limitation, files containing all information with regard to all investors as well as all financial and other confidential information not only of ARC II but also of Benessere.

35.     Cano provided all the stolen information to Swider who used it, with Cano's assistance, for his own gain and that of Renatus and to injure Plaintiffs.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

36.     Cano also granted Swider full editor access, with the ability to edit, delete, upload, and download files from the Box Account.

37.     Cano also added Swider as a "collaborator" on many files in the Box Account.

38.     For example, on March 21, 2023, Cano added Swider as a collaborator on a file called "Logins.xlsx," which contained credentials for Orlando and Benessere to numerous other websites and document repositories such as Docusign.com.

39.     Also on March 21, Cano added Swider as a collaborator to another file called "Pat's Login Credentials.boxnote," which contained credentials for Orlando, ARC II, and Benessere, and others to numerous other websites and document repositories such as QuickBooks, Benessere email accounts, DocuSign, and others.

40.     At Swider's insrtruction, Cano also changed the credit card on file that Box.com uses to bill for the Box Account from Orlando's card to a card belonging to Swider.

**IV. Swider Sends Out Defamatory Emails to ARC II's Members Using Mailchimp**

41.     Utilizing ARC II's confidential member information stolen from the Box Account, on March 5, 2024, Swider sent an email to ARC II's members with false and defamatory claims regarding Orlando and his management of ARC II in an attempt to have Orlando removed as ARC II's managing member. *See* Ex. A.

42.     The March 5 email was sent through Mailchimp.com, which is one of the websites for which Benessere's credentials were included in the Logins.xlsx file. On information and belief, the email sent was sent through MailChimp using Benessere's stolen credentials. Later, Swider would use the responding contacts garnered through this process to approach members about interfering in ARC II's business, including by attempting to assist in a failed takeover of ARC II.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

43.     Orlando was excluded as a recipient of the March 5 email but discovered it because Swider failed to remove Orlando's wife from the mailing list.

44.     Utilizing ARC II's confidential member information stolen from the Box Account, on March 21, 2024, Cano sent an email to ARC II's members through DocuSign specifying it was on behalf of DWAC but providing the Benessere email address acano@beneinvest.com.

45.     The March 21 email through DocuSign also attached a document requesting the ARC II investor provide a decision on whether to convert the ARC II investor's convertible note in ARC II into Trump Media Group shares or cash upon completion of the merger.

46.     Cano and Swider had no authority to send such a document to ARC II's investors and the document sent appears to provide the ARC II investors with false and misleading information.

## V. Swider, Cano, and Gregg Alper Unsuccessfully Attempt to Cause Orlando to be Removed as ARC II's Manager and have Alper Installed as Manager

47.     In furtherance of the scheme, Swider and Cano also set out to oust Orlando as managing member of ARC II with the objective of taking control of the distribution and percentage of shares in TMTG arising from ARC II membership units.

48.     Swider and Cano enlisted ARC II member Gregg Alper to attempt to oust Orlando, who agreed to take Orlando's place and further the scheme's interests.

49.     On information and belief, Alper contacted other ARC II members using confidential contact information provided to him by Swider and Cano that Alper was not otherwise entitled to or in possession of.

50.     On March 22, 2024, a purported "Written Consent of Members of ARC Global Investments II LLC" removing Orlando as Manager of ARC II and appointing Alper as Manager of ARC II was circulated between and among certain members of ARC II.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

51.     ARC II member Michael Melkersen also signed a separate written consent.

52.     On March 26, 2024, Orlando was provided notice of his purported removal.

53.     The notice of removal was ineffective as it did not have the consent of members with the requisite percentage of the relevant interests under ARC II's limited liability company agreement and there was no cause.

54.     On March 26, 2024, counsel for ARC II advised counsel for Alper and the others consenting to the ineffective notice of removal that "[a]ny attempt by Mr. Alper to take any action on behalf of ARC would be unauthorized."

55.     Nevertheless, that same day, Alper and the other signatories to the purported "Written Consent of Members of ARC Global Investments II LLC" filed an action in the Court of Chancery of the State of Delaware against Orlando and ARC II seeking "a declaration that Orlando has been removed as Manager of ARC pursuant to 6 Del. C. § 18-110 and he no longer has authority to act on ARC's behalf."

56.     Also, on March 26, 2024, Swider sent an email to a legal assistant at Homer Bonner Jacobs Ortiz, P.A., purporting to advance Alper as manager of ARC II: "As you may be aware, Mr. Orlando was voted out as managing member of ARC and has been replaced by Gregg Alger. [sic] It is my understanding that only Mr. Alger [sic] at this point has authority to direct the actions of ARC.  Please let me know if you need Mr. Alger's [sic] contact information so that your firm can take proper direction from someone with authority to speak for ARC and I will be more than happy to get that for you."

57.     On April 2, 2024, and with the knowledge that his appointment as Managing Member of ARC II was invalid, Alper sent correspondence to ARC II's members.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

58.     The April 2, 2024 correspondence included a signature block purporting to be from ARC Global Investments II LLC and from the misleading email address gregg@arc2invest.com.

59.     On April 11, 2024, the Delaware court entered a Status Quo Order providing in part that "Patrick Orlando shall be the sole Manager and/or Managing Member of ARC with full authority to act on ARC's behalf."

60.     The Status Quo Order also provided that "Plaintiffs, including Gregg Alper, shall not attempt to act on behalf of ARC."

## VI. Plaintiffs' Efforts to Investigate and Regain Control of Their Computer Systems

61.     On March 20, 2024, Benessere retained a computer forensics expert to investigate Cano's and Swider's unlawful and unauthorized access and regain control of Benessere's accounts.

62.     To date, Benessere has spent at least $6,000 on its computer forensics expert's efforts to investigate Cano's and Swider's unlawful and unauthorized access and regain control of Benessere's accounts.

63.     Cano unlawfully accessed continuously and failed to relinquish control over his Benessere email accounts, including but not limited to acano@benesserecapital.com until Benessere's forensic expert regained control on April 2, 2024.

64.     Cano also unlawfully accessed and failed to relinquish access to or administrative control over the Box Account until Benessere's forensic expert regained control on April 2, 2024.

65.     Swider unlawfully accessed and failed to relinquish access to the Box Account until Benessere's forensic expert regained control on April 2, 2024.

66.     Plaintiffs have been and will continue to suffer irreparable injury or harm if a preliminary injunction and permanent injunction are not granted against Plaintiffs.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

67.     For example, until April 2, 2024, Benessere still did not have administrator privileges over the Box Account and had limited access to its information, which was unlawfully controlled and accessed by Defendants Swider and Cano.

68.     Further, until April 2, 2024, Defendants Swider and Cano had unlawful access to confidential, proprietary information that they are not entitled to in the Box Account due to their refusal to relinquish control, including information confidential to ARC II.

69.     Further, Defendant Cano unlawfully accessed Benessere email systems and unlawfully sent emails from Benessere email accounts.

70.     As recently as March 21, 2024, Cano sent a DocuSign (which included a @beneinvest.com email address) to ARC II investors and members falsely claiming that they needed to sign a document to elect to convert their convertible notes and vote in favor of the DWAC/TMTG merger. The investors do not have a convertible note with DWAC, but with ARC II.  The email suggests that Swider and Cano attempted to procure the rights to vote ARC II's shares by fraud.

71.     Since Cano and Swider caused those emails to be sent using ARC II's stolen information, numerous noteholders have sued ARC II seeking to have their notes converted.  Such noteholders, who did not have conversion rights under the terms of their contracts, were led to believe they did have such rights by Cano and Swider. Those lawsuits have cost ARC tens of thousands of dollars to defend and have required substantial settlement payments.

72.     Further, Defendants Swider and Cano have refused to date to identify all persons to whom they provided information obtained from Benessere's Box Account and email systems.

73.     There is no reason to believe that Swider and Cano have ceased contacting ARC II's investors using contact information obtained without authorization from the Box Account by

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

Defendants and their co-conspirators. Indeed, Swider's counsel filed a litigation last week on behalf of 38 members of ARC II based on misinformation regarding ARC II's operations. It is reasonable to infer that such litigation was the result of Swider using the stolen information.

74.     ARC II and Benessere still do not know where all their confidential information downloaded from the Box Account is or with whom it has been unlawfully shared.

75.     All actions taken by Swider as described in this Complaint were taken on behalf of himself, Renatus, and the conspiracy, among others.

76.     The actions taken by Cano were taken on behalf of himself, Renatus, and the conspiracy, among others.

77.     The threatened injury to Plaintiffs if preliminary and permanent injunctive relief is not issued outweighs any damage such injunctions may cause to Defendants or those acting in concert with them.

78.     Plaintiffs have no adequate remedy at law to protect their confidential information, business information, and relationships with ARC II investors and others.

79.     The public has a cognizable interest in the protection of protected computers, electronic transmissions, and confidential and proprietary information.

<u>**Causes of Action**</u>

**Count I – Violation of the Electronic Stored Communications Act**
*(by Benessere against All Defendants)*

80.     Plaintiff Benessere realleges paragraphs 1 through 79 as fully set forth herein.

81.     Benessere is a subscriber to Box.com and Office 365, a provider of electronic communication services.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

82.     Defendants willfully, knowingly, and intentionally accessed the Box Account and Benessere email accounts, each a facility through which an electronic communication service is provided, without authorization, all in violation of 18 U.S.C. § 2701(a)(1).

83.     Defendants willfully, knowingly, intentionally and without authorization thereby obtained, altered, and prevented authorized access to electronic communications while they are in electronic storage, all in violation of 18 U.S.C. § 2701(a)(1).

84.     As a result of these violations, Benessere is entitled to injunctive relief, enjoining Defendants from their unlawful behavior in violation of 18 U.S.C. § 2701(a)(1).

### Count II – Breach of Fiduciary Duties
### *(by Benessere against Cano)*

85.     Plaintiff Benessere realleges paragraphs 1 through 79 as fully set forth herein.

86.     Cano owed Benessere implied fiduciary duties even after Cano no longer was engaged by Benessere.

87.     During his time engaged by Benessere, Cano had access to and was entrusted with proprietary and confidential information.

88.     Benessere reposed trust and confidence in Cano to, among other things, (i) not disclose, share, or otherwise use any of the property or information he worked with outside of Benessere; (ii) not at any time, during, or after his employment, directly or indirectly divulge to any person any non-public information obtained while performing his duties.

89.     Cano accepted the trust and confidence reposed in him by Benessere and assumed the aforementioned fiduciary duties.

90.     Cano's breach of his fiduciary duties was willful and malicious.

91.     As a direct and proximate result of Cano's breach of his fiduciary duties, Benessere has suffered injury.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

## Count III – Aiding and Abetting Breach of Fiduciary Duty
### *(by Benessere against Swider and Renatus)*

92.     Plaintiff Benessere realleges paragraphs 1 through 79 as fully set forth herein.

93.     Cano breached his fiduciary duties to Benessere.

94.     Swider and Renatus knew that Cano owed fiduciary duties to Benessere.

95.     Swider and Renatus substantially assisted or encouraged the commission of Cano's breach of fiduciary duty to Benessere by, inter alia, (i) compensating Cano; (ii) securing employment for Cano; (iii) accepting and using Benessere property and information misappropriated by Cano; and (iv) reviewing information in the Box Account.

96.      As a direct and proximate result of Swider's and Renatus's aiding and abetting Cano's breach of fiduciary duty, Benessere has suffered injury.

## Count IV – Violation of the Federal Computer Fraud & Abuse Act
### *(by Benessere against Cano)*

97.     Plaintiff Benessere realleges paragraphs 1 through 79 as fully set forth herein.

98.     Box.com is a cloud storage service that allows users to store data on their computers by transmitting the information over the internet. Such computers are, therefore, used in interstate commerce and are "protected computers."

99.     Benessere's email systems and mailchimp.com are also connected to the internet and are therefore used in interstate commerce and are "protected computers."

100.    From March 14, 2023 to March 20, 2024, Defendant Cano intentionally and continually accessed Benessere's computer systems to obtain confidential and proprietary information in violation of 18 U.S.C. § 1030(a)(2)(C) and accessed or downloaded 407 files.

101.    From January 31, 2023 onward, Defendant Cano knowingly and with intent to defraud accessed Benessere's computer systems covertly to further the intended fraud and obtain

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

valuable property for the benefit of Defendants in violation of 18 U.S.C. § 1030(a)(4) by accessing or downloading hundreds of files. Such valuable property includes, but is not limited to, credentials, investor contact information, clients lists, financial information, tax information, accounting information, privileged information, ledgers, strategies, and other protected information.

102.    On May 18, 2023, Defendant Cano intentionally accessed Benessere's computer systems covertly and as a result of such conduct, caused damage and loss in violation of 18 U.S.C. § 1030(a)(5)(C) by deleting numerous Benessere user accounts, including but not limited to that of Patrick Orlando, Alexander Monje, Gerardo Miro, and Eduardo Salume.

103.    On September 8, 2023, Defendant Cano intentionally accessed Benessere's computer systems covertly and as a result of such conduct, caused damage and loss in violation of 18 U.S.C. § 1030(a)(5)(C) by deleting the Benessere user accounts of Natalie Salume.

104.    On March 21, 2023, Defendant Cano knowingly and with the intent to defraud, trafficked a password or similar information through which a computer could be accessed without authorization in violation of 18 U.S.C. § 1030(a)(6)(A) by creating a user account for Eric Swider to access the Box Account without which Eric Swider would not have otherwise been able to access the Box Account.

105.    Such access and modifications to Benessere's computer systems, including but not limited to access to Box.com, Mailchimp, or Benessere emails, deletion of user accounts, and creation of user accounts, were never authorized by Benessere and was, therefore, without authorization.

106.    Benessere has suffered damage and loss through the cost of responding to the offenses, including conducting damage assessments and recovering or attempting to recover data,

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

metadata, programs, systems, and other information, as well as the disruption to its business for several months of the lack of access to and control over the information in the Box Account. These, as well as other losses and damages in an amount to be determined at trial, amount to over $5,000 aggregated over a one-year period.

107.    As a result of these violations, Plaintiff Benessere is entitled to injunctive relief, enjoining Defendant Cano and those acting in concert with him from their unlawful behavior in violation of 18 U.S.C. § 1030.

<b>Count V – Violation of the Federal Computer Fraud & Abuse Act</b><br><i>(by ARC II against Cano)</i>

108.    Plaintiff ARC II realleges paragraphs 1 through 79 as fully set forth herein.

109.    Box.com is a cloud storage service that allows users to store data on their computers by transmitting the information over the internet. Such computers are, therefore, used in interstate commerce and are "protected computers."

110.    ARC II leased certain space on the Box.com system operated by Benessere (the "**ARC II Folders**").

111.    From March 14, 2023 to March 20, 2024, Defendant Cano intentionally and continually accessed the ARC II Folders to obtain confidential and proprietary information in violation of 18 U.S.C. § 1030(a)(2)(C) and accessed or downloaded numerous files from the ARC II Folders.

112.    From March 14, 2023 to March 20, 2024, Defendants Cano knowingly and with intent to defraud accessed the ARC II Folders covertly to further the intended fraud and obtain valuable property for the benefit of Defendants in violation of 18 U.S.C. § 1030(a)(4) by accessing or downloading files from the ARC II Folders. Such valuable property includes, but is not limited

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

to, investor contact information, clients lists, financial information, tax information, accounting information, ledgers, strategies, and other protected information.

113.    Such access to the ARC II Folders, was never authorized by Benessere or ARC II and was, therefore, without authorization.

114.    ARC II has suffered damage and loss through the cost of responding to the offenses, including conducting damage assessments and recovering or attempting to recover data, metadata, programs, systems, and other information, as well as the disruption to its business for several months of the lack of access to and control over the information in the Box Account. These, as well as other losses and damages in an amount to be determined at trial, amount to over $5,000 aggregated over a one-year period.

115.    As a result of these violations, Plaintiff ARC II is entitled to injunctive relief, enjoining Defendant Cano and those acting in concert with him from their unlawful behavior in violation of 18 U.S.C. § 1030.

### Count VI – Violation of the Federal Computer Fraud & Abuse Act
#### *(by Benessere against Swider)*

116.    Plaintiff Benessere realleges paragraphs 1 through 79 as fully set forth herein.

117.    Box.com is a cloud storage service that allows users to store data on their computers by transmitting the information over the internet. Such computers are, therefore, used in interstate commerce and are "protected computers."

118.    Benessere's email systems and mailchimp.com are also connected to the internet and therefore used in interstate commerce and "protected computers."

119.    On March 21, 2023, Defendant Swider intentionally and continually accessed Benessere's computer systems for nearly an hour covertly to obtain confidential and proprietary information in violation of 18 U.S.C. § 1030(a)(2)(C) and accessed seven files.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

120.    On April 16, 2023, Defendant Swider intentionally and continually accessed Benessere's computer systems covertly to obtain confidential and proprietary information in violation of 18 U.S.C. § 1030(a)(2)(C) and accessed two files.

121.    At least one of the files Swider accessed contained confidential bank account information belonging to third-party Benessere Enterprises Inc. that Benessere holds in the Box Account for the benefit of Benessere Enterprises Inc.

122.    From January 31, 2023 onward, Defendants Swider knowingly and with intent to defraud accessed Benessere's computer systems covertly to further the intended fraud and obtain valuable property for the benefit of Defendants in violation of 18 U.S.C. § 1030(a)(4). Such valuable property includes, but is not limited to, credentials, investor contact information, clients lists, financial information, tax information, accounting information, privileged information, ledgers, strategies, and other protected information.

123.    Such access to Benessere's computer systems including but not limited to access to Box.com or Mailchimp, was never authorized by Benessere and was, therefore, without authorization.

124.    Benessere has suffered damage and loss through the cost of responding to the offenses, including conducting damage assessments and recovering or attempting to recover data, metadata, programs, systems, and other information, as well as the disruption to its business for several months of the lack of access to and control over the information in the Box Account. These, as well as other losses and damages in an amount to be determined at trial, amount to over $5,000 aggregated over a one-year period.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

125.    As a result of these violations, Plaintiff Benessere is entitled to injunctive relief, enjoining Defendant Swider and those acting in concert with him from their unlawful behavior in violation of 18 U.S.C. § 1030.

### Count VII – Violation of Florida Computer Abuse and Data Recovery Act
#### *(by Benessere against Cano)*

126.    Plaintiff Benessere realleges paragraphs 1 through 79 as fully set forth herein.

127.    Florida Statutes § 668.803 provides the statutory framework for a private civil action for bad acts with respect to a protected computer.

128.    Swider and Cano conspired to and did obtain information from the Box Account without authorization and, as a result, caused Benessere harm in violation of Florida Statutes § 668.803(1).

129.    The Box Account meets the definition of a "protected computer" under Florida Statutes § 668.802(6) as it can only be accessed through a user account and password or a direct URL that is controlled by the administrator of the Box Account.

130.    Cano transmitted a code in the form of changed access users and passwords to the Box Account without authorization by deleting numerous Benessere user accounts, including but not limited to that of Patrick Orlando, Alexander Monje, Gerardo Miro, Natalie Salume, and Eduardo Salume and causing Benessere harm in violation of Florida Statutes § 668.803(2).

131.    Cano transmitted a code in the form of changed access users and passwords to the Box Account without authorization creating a user account for Eric Swider to access the Box Account without which Eric Swider would not have otherwise been able to access the Box Account and causing Benessere harm in violation of Florida Statutes § 668.803(2).

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

132.     Cano trafficked in the Box Account's technological access barrier by creating a user account for Eric Swider to access the Box Account without which Eric Swider would not have otherwise been able to access the Box Account.

133.     Cano used the ill-gotten information for his own personal gain and profited from it while causing Benessere significant harm.

134.     Benessere is the owner of information stored in the Box Account and uses the information in connection with the operation of a business.

### Count VIII – Violation of Florida Computer Abuse and Data Recovery Act
### *(by ARC II against Cano)*

135.     Plaintiff ARC II realleges paragraphs 1 through 79 as fully set forth herein.

136.     Florida Statutes § 668.803 provides the statutory framework for a private civil action for bad acts with respect to a protected computer.

137.     Swider and Cano conspired to and did obtain information from the Box Account without authorization and, as a result, caused ARC II harm in violation of Florida Statutes § 668.803(1).

138.     The Box Account meets the definition of a "protected computer" under Florida Statutes § 668.802(6) as it can only be accessed through a user account and password or a direct URL that is controlled by the administrator of the Box Account.

139.     Cano transmitted a code in the form of changed access users and passwords to the Box Account and ARC II's information contained within the Box Account without authorization, causing ARC II harm in violation of Florida Statutes § 668.803(2).

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

140.    Cano trafficked in the Box Account's technological access barrier by providing Swider credentials to access the Box Account and ARC II's information contained within the Box Account without authorization.

141.    Cano used the ill-gotten information for his own personal gain and profited from it while causing ARC II significant harm.

142.    ARC II is the owner of information stored in the Box Account and uses the information in connection with the operation of a business.

### Count IX – Violation of Florida Computer Abuse and Data Recovery Act
### *(by Benessere against Swider)*

143.    Plaintiff Benessere realleges paragraphs 1 through 79 as fully set forth herein.

144.    Florida Statutes § 668.803 provides the statutory framework for a private civil action for bad acts with respect to a protected computer.

145.    Swider and Cano conspired to and did obtain information from the Box Account without authorization and, as a result, caused Benessere harm in violation of Florida Statutes § 668.803(1).

146.    The Box Account meets the definition of a "protected computer" under Florida Statutes § 668.802(6) as it can only be accessed through a user account and password or a direct URL that is controlled by the administrator of the Box Account.

147.    Swider used the ill-gotten information for his own personal gain and profited from it while causing Benessere significant harm.

148.    Benessere is the owner of information stored in the Box Account and uses the information in connection with the operation of a business.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

**Count X – Tortious Interference with Business Relationships**
*(by ARC II against Swider)*

149.     Plaintiff ARC II realleges paragraphs 1 through 79 as fully set forth herein.

150.     ARC II has a business relationship with its members and investors.

151.     Swider was aware of ARC II's business relationships with its members and investors.

152.     Swider used the information improperly obtained from the Box Account to contact ARC II's investors in an effort to knowingly interfere with ARC II's business relationships with such investors.

153.     Swider's communications to ARC II's investors contained false statements regarding whom ARC II members should communicate with, i.e., Swider, Alper, and Cano instead of Orlando who was at all times ARC II's manager.

154.     Swider caused harm to such relationships for which ARC II has suffered damages.

155.     Swider had no control over or financial interest in ARC II's business relationships with ARC II's investors at the time of the interference.

156.     Swider's interference was intentional and unjustified.

**Count XI – Conversion**
*(by ARC II against Swider and Cano)*

157.     Plaintiff ARC II realleges paragraphs 1 through 79 as fully set forth herein.

158.     Swider and Cano locked ARC II out of its confidential business information, investor contact information, and files by removing Patrick Orlando's access to the Box Account.

159.     Swider and Cano communicated about and jointly decided to remove Patrick Orlando's access to the Box Account, which included ARC II's confidential business information, investor contact information, and files.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

160.    Swider's and Cano's actions in locking ARC II out of its confidential business information, investor contact information, and files was an act of dominion wrongfully asserted over ARC II's property.

161.    Swider's and Cano's actions in locking ARC II out of its confidential business information, investor contact information, and files was inconsistent with ARC II's ownership over confidential business information, investor contact information, and files.

162.    Despite repeated demands to relinquish control over the Box Account and ARC II's confidential business information, investor contact information, and files contained therein, Swider and Cano refused.

163.    As a direct and proximate result of Swider's and Cano's wrongful exercise of dominion and control over ARC II's confidential business information, investor contact information, and files, ARC II has suffered damages.

### Count XII – Conversion
### *(by Benessere against Swider and Cano)*

164.    Plaintiff Benessere realleges paragraphs 1 through 79 as fully set forth herein.

165.    Swider and Cano locked Benessere out of its Box Account and the confidential business information, credentials, investor contact information, clients lists, financial information, tax information, accounting information, privileged information, ledgers, strategies, and other protected information contained therein in removing Patrick Orlando's access to the Box Account.

166.    Swider and Cano communicated about and jointly decided to remove Patrick Orlando's access to the Box Account.

167.    Swider's and Cano's actions in locking Benessere out of its Box Account and the confidential business information, credentials, investor contact information, clients lists, financial information, tax information, accounting information, privileged information, ledgers, strategies,

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

and other protected information contained therein was an act of dominion wrongfully asserted over Benessere's property.

168.    Swider's and Cano's actions in locking Benessere out of its Box Account and the confidential business information, credentials, investor contact information, clients lists, financial information, tax information, accounting information, privileged information, ledgers, strategies, and other protected information contained therein was inconsistent with Benessere's ownership over its Box Account, and the credentials, investor contact information, clients lists, financial information, tax information, accounting information, privileged information, ledgers, strategies, and other protected information contained therein.

169.    Swider and Cano's joint effort to change the payment information for the Box Account to Swider's payment information was also inconsistent with Benessere's ownership over its Box Account, and the credentials, investor contact information, clients lists, financial information, tax information, accounting information, privileged information, ledgers, strategies, and other protected information contained therein.

170.    Despite repeated demands to relinquish control over the Box Account and the confidential business information, credentials, investor contact information, clients lists, financial information, tax information, accounting information, privileged information, ledgers, strategies, and other protected information contained therein, Swider and Cano refused.

171.    As a direct and proximate result of Swider's and Cano's wrongful exercise of dominion and control over Benessere's Box Account and the confidential business information, credentials, investor contact information, clients lists, financial information, tax information, accounting information, privileged information, ledgers, strategies, and other protected information contained therein, Benessere has suffered damages.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

### Count XIII – Civil Conspiracy
### *(by Plaintiffs against All Defendants)*

172.     Plaintiffs reallege paragraphs 1 through 79 as fully set forth herein.

173.     Cano, Swider, Renatus, and others were and are parties to a civil conspiracy to hack into Benessere's computer systems and use the information contained therein to have Orlando ousted as DWAC's CEO, defame Orlando, contact ARC II's members, cause litigation and dissent among ARC II's investors, oust Orlando as manager of ARC II, dilute ARC II's ownership in DWAC/TMTG, and profit personally as a result.

174.     Cano, Swider, and Renatus combined, conspired, or agreed with others known and unknown, to commit an unlawful act, including but not limited to violations of the federal Electronic Stored Communications Act, federal Computer Fraud and Abuse Act, the Florida Computer Abuse and Data Recovery Act, conversion, and tortious interference with ARC II's business relationships.

175.     In furtherance of their conspiracy, Cano, Swider, Renatus, and others known and unknown committed, among others, the following overt acts:

    a.   After Cano left Benessere, Swider hired Cano as his assistant;

    b.   Upon information and belief, Swider promised Cano that if he helped him monitor and access the information on Benessere's computer systems and provide him unlawful access to the Box Account, he would use his sway over DWAC's board to make Cano the president of DWAC and provide him with an outsized compensation package;

    c.   Swider compensated Cano through Renatus;

    d.   Swider used his Renatus email accounts to communicate frequently regarding DWAC and Patrick Orlando;

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

e.  On May 18, 2023, Cano and Swider arranged for or directly caused Orlando's and other Benessere user accounts for the Box Account to be deleted;

f.  Cano also improperly and without authorization added Swider as a user on the Box Account;

g.  Cano improperly and without authorization added Swider as a "collaborator" on files in the Box Account;

h.  Cano and Swider improperly refused to restore Orlando's access to the Box Account for nearly one year;

i.  Cano and Swider unlawfully retained and exercised control of the administrator credentials for the Box Account until April 2, 2024 when Benessere and ARC II regained control by hiring experts;

j.  At Swider's instruction, Cano also improperly and without authorization changed the credit card on file that Box.com uses to bill for the Box Account from one of Orlando's to another card under Swider's control;

k.  Cano and Swider repeatedly accessed the Box Account without authorization, including, without limitation, files containing all information regarding all investors as well as all financial and other confidential information not only of ARC II but also of Benessere;

l.  Cano and Swider improperly and without authorization communicated with ARC II investors and members and others using information from the Box Account to disparage Orlando and further their conspiracy;

m.  Cano and Swider, on information and belief, provided Gregg Alper with confidential information from the Box Account that Alper was not entitled to so

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

that Alper could contact ARC II investors and members and send false communications to ARC II investors and members regarding who was the manager of ARC II; and

n.  Swider falsely communicated with ARC II investors and members using confidential information from the Box Account.

176.  Many of the overt acts occurred in Miami-Dade County.

177.  As a direct and proximate result of the conspiracy between and among Swider, Cano, Renatus and other unnamed co-conspirators and their respective overt acts in furtherance of the conspiracy, Plaintiffs have suffered and continue to suffer damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against Swider, Renatus, and Cano awarding them damages, attorneys' fees, losses, and costs and imposing a preliminary and permanent injunction, as follows:

a.  enjoining and restraining Swider, Cano, Renatus, and anyone acting in concert with them, from accessing any of Plaintiffs' computers and information, directly or indirectly, including but not limited to the Box Account and Benessere email accounts, for any purpose whatsoever;

b.  enjoining and restraining Swider, Cano, Renatus, and anyone acting in concert with them, from obtaining, directly or indirectly, any confidential, secured, and/or proprietary information belonging to Plaintiffs;

c.  enjoining and restraining Swider, Cano, Renatus, and anyone acting in concert with them, from retaining and/or using, directly or indirectly, any information

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

belonging to Plaintiffs that they acquired without authorization, for any purpose whatsoever;

d.  ordering Swider, Cano, Renatus, and anyone acting in concert with them, to immediately take all steps necessary to preserve and retain, and enjoining them from destroying, erasing, altering, concealing, or otherwise disposing of, in any manner, directly or indirectly, any documents or records that relate to Plaintiffs, including but not limited to all computer data, electronically stored information, and electronic storage media including flash drives, hard drives, backup tapes, and information stored on internet hosted accounts belonging to Plaintiffs;

e.  ordering Swider, Cano, Renatus, and anyone acting in concert with them, to immediately disgorge and return all of Plaintiffs' information in their possession, custody or control to Plaintiffs, in whatever form it exists;

f.  ordering Swider, Cano, Renatus, and anyone acting in concert with them, to immediately turn over any computers, mobile devices, or hard drives they used for an independent forensic examination, inspection, and creation of a mirror image; and

g.  awarding Plaintiffs such other and further relief as this Court deems just and proper.

### **Demand for Jury Trial**

Plaintiffs demand a trial by jury of all issues triable as of right by jury.

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com

Date: November 12, 2024.

Respectfully submitted:



*Attorneys for Plaintiffs*
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
Phone: (305) 350-5143
Fax: (305) 982-0069

By: */s/ Antonio M. Hernandez, Jr.*
      Kevin P. Jacobs, Esq.
      Email: kjacobs@homerbonner.com
      Florida Bar No: 169821
      Antonio M. Hernandez, Jr., Esq.
      Email: ahernandez@homerbonner.com
      Florida Bar No: 0117756

Homer Bonner Jacobs Ortiz, P.A.
1200 Four Seasons Tower | 1441 Brickell Avenue | Miami Florida 33131
305 350 5100 | www.homerbonner.com