## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

BENESSERE INVESTMENT GROUP, LLC,
and ARC GLOBAL INVESTMENTS II, LLC,

      Plaintiffs,

v.                                   Case No.: 1:24-CV-21104-RAR

ERIC SWIDER, ALEXANDER CANO, and
RENATUS ADVISORS LLC,

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
## WITH PREJUDICE AND INCORPORATED MEMORANDUM OF LAW

Defendants Eric Swider ("Swider"), Alexander Cano ("Cano"), and Renatus Advisors LLC ("Renatus") (collectively, "Defendants"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move to dismiss with prejudice the Amended Complaint filed by Plaintiffs Benessere Investment Group, LLC ("Benessere") and ARC Global Investments II, LLC ("ARC II") (collectively, "Plaintiffs").  In support thereof, Defendants state as follows:

## **INTRODUCTION**

Plaintiffs' second attempt at pleading claims against Defendants fares no better than their first attempt.  In fact, it is worse and a more egregious abuse of the judicial process.  The Amended Complaint makes clear that Plaintiffs were not injured by Defendants' alleged misconduct, fail to state a single claim against Defendants, and have falsely accused Defendants of wrongdoing—all by design to escalate fees and costs in this frivolous action.  On October 31, 2024, this Court dismissed seven (7) of Plaintiffs' ten (10) claims for relief asserted in their initial Complaint.  (*See* D.E. 35, "Order".)  Yet, rather than focusing on the claims that remained, Plaintiffs opted to file an Amended Complaint with even *more* claims and even *more* allegations that effectively foreclose any relief from this Court.  As this Court recognized at the November 13, 2024 Status Conference, leave to amend is *not* an invitation to amend.  (*See* Hr'g Tr. of Nov. 13, 2024 Status Conference ("Hr'g Tr.") at 23.)[1]  At this juncture, there can be no dispute that Plaintiffs' claims are manufactured and severely "over pled."  (*Id.* at 7.)  Even accepting the allegations as true, the Amended Complaint unequivocally demonstrate that all thirteen (13) claims in Plaintiffs' "kitchen sink" Amended Complaint fail and should be dismissed with prejudice.  (*Id.*)  This action should be put to rest.

---

[1] For ease of reference, the transcript of the Status Conference is attached hereto as **Exhibit 1**.

## BACKGROUND

According to Plaintiffs, in December 2020, DWAC was formed as a special purpose acquisition company ("SPAC") to acquire or merge with an existing target company.  (D.E. 41, "Amended Complaint" or "AC", ¶ 11.)  SPACs are formed by "sponsors" who provide the initial capital to cover the SPAC's expenses and, in exchange, receive a percentage interest in the SPAC.  (*Id.* ¶ 13.)  ARC II, as DWAC's sponsor, holds "approximately 19% of the interest in DWAC" and "maintains a group of investors" that enabled DWAC to become publicly traded and ultimately merge with Trump Media & Technology Group Corp. ("TMTG").[2]  (*Id.* ¶¶ 14–15.)  Benessere is not alleged to have a relationship with or interest in DWAC.

ARC II and Benessere are substantially owned and/or managed by non-party Patrick Orlando ("Orlando")—the instigator of the instant action.  (*Id.* ¶¶ 3–4, 16.)  Orlando previously served as DWAC's Chairman and CEO, as well one of its directors until March 25, 2024.  (*Id.* ¶ 16.)  Plaintiffs allege that after announcement of the DWAC/TMTG merger, Swider, then a DWAC director, "published false and misleading representations of what was occurring at DWAC to DWAC's directors and other individuals" in order to oust Orlando and assume the role of CEO.  (*Id.* ¶ 19.)  According to Plaintiffs, this scheme was designed to benefit Swider individually and his company Renatus.  (*Id.* ¶ 21.)[3]

---

[2] Shortly after the filing of this action, DWAC and TMTG merged and are now known as TMTG.  (AC ¶¶ 6, 17.)  To track the allegations in the Amended Complaint, the entity is referred to as DWAC.

[3] As this Court is aware, currently pending in Sarasota County are claims against ARC II and Orlando, among others, arising from their fiduciary breaches to DWAC.  *See Trump Media & Tech. Grp. Corp., et al. v. ARC Glob. Invs. II LLC, et al.*, No. 2024 CA 001061 (Fla. 12th Jud. Cir. Ct.) (the "Sarasota Action").  On October 15, 2024, ARC II filed Counterclaims in the Sarasota Action which necessarily overlap with the claims alleged in this action but advance *materially inconsistent* theories of liability.  *See id.* at DIN 231.  For example, while Orlando, through ARC II and Benessere, claim here that the purported "scheme" to oust Orlando was designed to benefit

In dramatic fashion, Plaintiffs allege that "to gain control of ARC II and complete his takeover of the entire DWAC enterprise," Swider enlisted the support of Cano to obtain confidential information about ARC II and its investors that was held by Benessere in a password-protected account at Box.com ("Box Account").  (*Id.* ¶¶ 23–24.)  Plaintiffs further allege Cano served as Orlando's assistant at Benessere until January 30, 2023 and, following his departure, became Swider's personal assistant. (*Id.* ¶¶ 24, 27.) Cano was allegedly able to access confidential information maintained in the Box Account using his Benessere email credentials.  (*Id.* ¶¶ 24–25.) Plaintiffs do not allege that Cano's credentials were deactivated after he left Benessere.

According to Plaintiffs, Cano "repeatedly accessed the Box Account" to obtain investor, financial, and other unspecified confidential information regarding ARC II and Benessere, and provided the purportedly stolen information to Swider.  (*Id.* ¶¶ 33–35.)  Plaintiffs also allege that the Box Account contained a file called "Logins.xlsx," which housed Orlando's and Benessere's login credentials to other websites, such as DocuSign and Mailchimp.  (*Id.* ¶¶ 38–39, 41–42.) Defendants allegedly used the purportedly "stolen" information to send "false and misleading" emails to ARC II's investors via Benessere's DocuSign and Mailchimp accounts.  (*Id.* ¶¶ 41–42, 44–46.)  The emails are alleged to have consisted of (1) defamatory claims about Orlando and his management of ARC II, and (2) a DocuSign requesting that ARC II investors decide on whether

---

Swider individually and his company Renatus (AC ¶ 21), Orlando, through ARC II contends in the Sarasota Action that the purported "scheme" was initiated by Swider in his official capacity as CEO, that DWAC provided Swider with express authority to act on its behalf, and that Swider and Cano "stole" investor "contact information and confidential documents" to benefit DWAC.  *See Trump Media & Tech. Grp. Corp.*, No. 2024 CA 001061, DIN 231 at ¶¶ 15, 47–48, 58–62, 73–74, 96–97, 113–114.  Defendants respectfully request that this Court take judicial notice of ARC II's Counterclaims filed in the Sarasota Action.  *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (courts may take judicial notice of public records "without converting a motion to dismiss into a motion for summary judgment"); *see also Hous. Opportunities Project For Excellence, Inc. v. Key Colony No. 4 Condo. Assoc., Inc.*, 510 F. Supp. 2d 1003, 1011 (S.D. Fla. 2007) (taking judicial notice of complaint).

to convert their convertible notes in ARC II into TMTG shares or cash upon completion of the merger.  (*Id.* ¶¶ 41–46.)  Plaintiffs do not allege what action, if any, the ARC II investors took in response to the emails.  Nor do they allege how they have been or would be injured by Defendants' purported misconduct.  (*See id.* ¶¶ 66, 77.)[4]

In addition to the purported scheme to "takeover of the entire DWAC enterprise" (*Id.* ¶ 23), Plaintiffs claim that Swider and Cano also "set out to oust Orlando as managing member of ARC II" and, to further that scheme, enlisted the support of several ARC II members.  (*Id.* ¶¶ 47–51.) Notwithstanding these baseless allegations, the Amended Complaint makes clear that the purported scheme to remove Orlando as ARC II's managing member was unsuccessful.  (*Id.* ¶ 59.) The Amended Complaint also makes clear that Cano provided Orlando with access to the Box Account on December 4, 2023.  (*Id.* ¶ 32.)  It was not until four (4) months later that Orlando finally retained a "forensic expert" to purportedly investigate the Box Account and Benessere's email accounts and to disable Defendants' access.  (*Id.* ¶¶ 61–65.)

Based on the foregoing, Plaintiffs assert thirteen (13) baseless statutory and common law claims for relief, many of which were previously asserted—and dismissed—by this Court but which contain no additional plausible facts in support.  Through the Amended Complaint, Plaintiffs seek injunctive relief in the form of prohibiting Defendants from accessing Plaintiffs' computers and information and ordering Defendants to return unspecified property, among others. (*Id.* at 27–28.)  Plaintiffs also vaguely seek "damages," without identifying how they were damaged or what would make them whole.  (*Id.*)  For the reasons set forth herein, each claim must

---

[4] At most, the purported injury stems from allegations that "Benessere retained a computer forensics expert" (AC ¶ 61), presumably at some expense to Benessere, none of which is actually pleaded.  Additionally, the results of the forensic investigation were conspicuously not disclosed. (*Id.* ¶ 62.)

be dismissed with prejudice.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere "labels and conclusions," "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of" fact are insufficient. *Id.* at 678–79; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

**I.**     **Plaintiffs' "Kitchen-Sink" Amended Complaint Should Be Dismissed in Its Entirety.**

All thirteen (13) claims for relief in Plaintiffs' "kitchen-sink" Amended Complaint fail and must be dismissed. As fully set forth herein, Plaintiffs' claims fail for lack of jurisdiction, failure to state a claim, and otherwise fail as a matter of law. Dismissal with prejudice is warranted.

### A.  Count I for Violation of the Electronic Stored Communications Act Fails.

In Count I, Benessere asserts a claim against "all Defendants" for purportedly violating the Electronic Stored Communications Act, 18 U.S.C. § 2701(a)(1) (the "SCA"). The SCA creates a civil cause of action against anyone who "intentionally accesses without authorization a facility through which an electronic communication service is provided . . . and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. § 2701(a)(1); *id.* § 2707(a) (creating private cause of action).

Article III of the United States Constitution limits the jurisdiction of federal courts to considerations of "Cases" and "Controversies." *See* U.S. Const. art. III § 2. "The doctrine of mootness derives directly from the case-or-controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.'" *Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001) (quoting *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir.

1997)).  A case becomes moot and ceases to be a case or controversy for purposes of Article III when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Id.* at 1335–36 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  Stated differently, "a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."  *Id.* at 1336 (citation omitted).  "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed."  *L.E. v. Superintendent of Cobb Cnty. Sch. Dist.*, 55 F.4th 1296, 1300 (11th Cir. 2022) (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335–36 (11th Cir. 2001)).

Here, Benessere alleges that Defendants' purported unauthorized access to the Box Account and Office 365 email accounts violate the SCA and, as a result, seek to enjoin Defendants from that "unlawful behavior."  (AC ¶¶ 81–84.)  However, Benessere's claim for injunctive relief is moot given that, by Plaintiffs' own concession, Defendants no longer have access to these accounts.  (*Id.* ¶¶ 63–66 (alleging that "Benessere's forensic expert regained control" of the Box Account and email accounts on April 2, 2024); Hr'g Tr. at 10 (conceding that Plaintiffs regained control of the Box Account and explaining that Plaintiffs "updated the complaint to reflect that").)  As such, Count I must be dismissed because there "no longer presents a live controversy with respect to which the court can give meaningful [injunctive] relief"—a fact Plaintiffs were aware of long before they filed their Amended Complaint.  *Graham v. Att'y Gen.*, 110 F.4th 1239, 1244 (11th Cir. 2024); *see also Parnell v. Sch. Bd. of Lake Cnty.*, 731 F. Supp. 3d 1298, 1309 (N.D. Fla. 2024) (finding that the court lacked jurisdiction over plaintiffs' claim where the requested injunctive relief was moot); *Gatlyn v. Doe*, No. 24-CV-22444, 2024 WL 4502280, at *4 (S.D. Fla. Oct. 16, 2024) (Ruiz, J.) (dismissing requests for injunctive and declaratory relief as moot where

plaintiff received the requested relief after the complaint was filed).

Count I should also be dismissed as a shotgun pleading, that is, improperly lumping "all Defendants" together without informing each Defendant separately of the allegations that apply to them.  (*See* Order at 13); *see also Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).  For all of the foregoing reasons, Count I must be dismissed with prejudice.

### B. Counts II and III for Breach of Fiduciary Duty and Aiding and Abetting Fiduciary Breach Fail.

In Count II, Benessere asserts a claim against Cano for allegedly breaching his "implied fiduciary duties" by purportedly disclosing Benessere's property or information to persons outside of Benessere.  (AC ¶¶ 86, 88.)  Additionally, in Count III, Benessere asserts a claim against Swider and Renatus for allegedly aiding and abetting Canos' breach of fiduciary duty.  (*Id.* ¶ 95.)  While this Court previously found that Benessere sufficiently plead a fiduciary duty and potential breach of that duty (Order at 20–22), Counts II and III must be dismissed for failure to allege damages— an essential element of these claims.  *See Est. of Scutieri v. Chambers*, No. 08-CV-22962, 2009 WL 10668602, at *3 (S.D. Fla. June 12, 2009), *aff'd*, 386 F. App'x 951 (11th Cir. 2010).

Here, Benessere only vaguely alleges that it "suffered injury" without further identifying how it was damaged or what would make it whole.  (AC ¶¶ 91, 96.)  Notably, this Court recognized this fundamental pleading deficiency at the November 13 Status Conference, where it repeatedly emphasized that the Amended Complaint is devoid of *any* allegations to support Plaintiffs' purported claim to damages.  (*See* Hr'g Tr. at 5 ("And everything I see in this prayer for relief, is 'we want our documents back,' 'we want access,' 'we want to make sure you don't have any other devices.' Most of everything you've asked for, there's no damages."); *id.* at 4 ("At most, the only damages that I've seen in . . . this case were for the forensic expert that was brought in to look at some of the purported copying of documents in the drive."); *id.* at 9 ("I didn't see anything in [the

Amended Complaint] that would establish or allege a valuation decline or an impact on the Benessere business."); *id.* at 11 ("I'm struggling . . . to see any other measure of damages ascertainable from these allegations.").)

Accordingly, because Benessere has failed to allege any damages proximately caused by the purported breach of fiduciary duty or aiding and abetting fiduciary breach, Counts II and III must be dismissed. *See Est. of Scutieri*, 2009 WL 10668602, at *3 (granting motion to dismiss where plaintiffs failed to plead "an essential element to their fiduciary duty claims: damages"); *Vallina v. Mansiana Ocean Residences, LLC*, No. 10-CV-21506, 2010 WL 11553422, at *6 (S.D. Fla. Oct. 12, 2010) (dismissing fiduciary duty claim where plaintiff failed to "allege that [defendant] proximately caused its damages"); *see also Daedalus Cap. LLC v. Vinecombe*, 625 F. App'x 973, 978 (11th Cir. 2015) (recognizing that an aiding and abetting claim fails without an underlying violation).

### C.  Counts IV–VI for Violations of the Federal Computer Fraud & Abuse Act Fail.

In Counts IV and VI, Benessere asserts claims against Cano and Swider, respectively, under the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA") for accessing the Box Account, Mailchimp Account, and Benessere's email systems.  (AC ¶¶ 98–99, 117–118.) In Count V, ARC II also asserts a claim against Cano under the CFAA for accessing the Box Account, premised on a new theory that ARC II "leased certain space" on the Box Account operated by Benessere.  (*Id.* ¶ 110.)  The CFAA claims fail on several grounds and must be dismissed.

***First***, notwithstanding this Court's clear instructions to Plaintiffs on how to cure their fatal pleading deficiencies, the CFAA claims still amount to a shotgun pleading.  (Order at 12–13.) Indeed, the CFAA claims *again* start by "reincorporating all facts asserted" in paragraphs 1–79 of the Amended Complaint and *again* formulaically recite the elements of each CFAA violation

"without specifying which facts alleged meet each element of the respective claims." (*Id.* at 13); *Perez v. Radioshack Corp.*, No. 01-CV-5095, 2002 WL 1335158, at *2 (S.D. Fla. Apr. 23, 2002) ("By incorporating all paragraphs preceding a count into each separate count, [Plaintiff] makes it 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996))).

Compounding this pleading deficiency, Plaintiffs "squeeze[]" multiple CFAA violations into each count, though each requires different defenses and elements of proof and must be separately alleged. (Order at 13; AC ¶¶ 100–104, 111–112, 119–120, 122); *see also Taylor v. Serv. Corp. Int'l*, No. 20-CV-60709, 2021 WL 6752504, at *1 (S.D. Fla. Mar. 31, 2021) (Ruiz, J.) ("[C]ourts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation." (citation omitted)). At this juncture, Plaintiffs had *two* opportunities to plead their CFAA claims and have utterly failed to cure the pleading defects identified by this Court. Plaintiffs deserve no further chances. Counts IV through VI should be dismissed on this basis alone. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) (dismissal with prejudice of a shotgun pleading is warranted where "plaintiff had fair notice of the defects and a meaningful chance to fix them"); *see also Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-CV-24668, 2021 WL 2592914, at *10 (S.D. Fla. Apr. 23, 2021) (dismissing shotgun pleading with prejudice where plaintiff already had "one chance to replead").

**Second**, even if this Court were not inclined to dismiss the CFAA claims on shotgun pleading grounds (it should), Plaintiffs' claim for injunctive relief arising from Defendants' purportedly "unlawful behavior in violation of 18 U.S.C. § 1030" is moot. (AC ¶¶ 107, 115, 125.)

As fully set forth in Section I(A) above, Defendants no longer have access to the Box Account or any of Benessere's email systems.  (*Id.* ¶¶ 61–66.)  Nor can they, given that Plaintiffs' "forensic expert regained control" of these accounts on April 2, 2024.  (*Id.* ¶¶ 63–65.)  Accordingly, Counts IV through VI must be dismissed because there "no longer presents a live controversy with respect to which the court can give meaningful [injunctive] relief."  *Graham*, 110 F.4th at 1244.

**Third**, Plaintiffs fail to sufficiently allege that they suffered damages as a result of Defendants' purported CFAA violations.  Under the CFAA, the term "damage" means "any impairment to the integrity or availability of data, a program, a system, or information[.]"  18 U.S.C. § 1030(e)(8).  A plain reading of the CFAA claims shows Plaintiffs merely allege that they "suffered damage" without more.  (AC ¶¶ 106, 114, 124.)  Absent additional facts, which Plaintiffs cannot advance, Plaintiffs' allegations are insufficient "to raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555; *Trujillo v. Fla.*, 481 F. App'x 598, 600 (11th Cir. 2012) ("legal conclusions couched as factual allegations" are insufficient to state a claim).

**Finally**, the factual allegations asserted in the Amended Complaint belie any contention that ARC II suffered any "loss through the cost of responding to the offenses" in the amount of "over $5,000 aggregated over a one-year period" sufficient to sustain Count V.  (AC ¶ 114); *see also* 18 U.S.C. § 1030(g), (c)(4)(A)(i)(I) (permitting a civil action under the CFAA only if the plaintiff incurs a minimum "loss" of $5,000); 18 U.S.C. § 1030 (e)(11) (defining the term "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]").  The Amended Complaint alleges only that "*Benessere* retained a computer forensics expert to investigate [Defendants'] unlawful and unauthorized

10

access and retain control of *Benessere's* accounts" and that "*Benessere* has spent at least $6,000 on its computer forensics expert's efforts to investigate [Defendants'] unlawful and unauthorized access and regain control of *Benessere's* accounts." (AC ¶¶ 61–62 (emphases added).) Accordingly, ARC II's CFAA claim (Count V) fails on this additional basis.

For all the foregoing reasons, Counts IV through VI must be dismissed with prejudice.

### D. Counts VII–IX for Violations of the Florida Computer Abuse and Data Recovery Act Fail.

In Counts VII through IX, Plaintiffs assert claims against Defendants for purportedly violating the Florida Computer Abuse and Data Recovery Act, Fla. Stat. § 668.803 (the "CADRA"), premised on Defendants' unauthorized access to information in the Box Account, as well as changing the access users and passwords to the Box Account without Benessere's authorization. (AC ¶¶ 128, 130–131, 137, 139, 145.)[5] Specifically, in Counts VII and VIII Benessere and ARC II, respectively, assert claims against Cano, and in Count IX Benessere asserts a claim against Swider. The deficiencies in Counts VII through IX largely track those in Counts IV and V and must be dismissed. Plaintiffs *again* allege two distinct violations of the CADRA under a single count, *again* fail to allege specific facts in support of Defendants' purportedly wrongful conduct, and *again* merely recite the statutory elements in conclusory fashion.

As this Court previously recognized, the "CADRA claims follow the same shotgun formula as the CFAA claims, reasserting all allegations of the Complaint and reciting the elements of the two separate statutory claims." (Order at 14 (citations omitted).) The same holds true here— Counts VII through IX improperly incorporate *all* of the allegations of the Amended Complaint (AC ¶¶ 126, 135, 143), and Counts VII and VIII improperly recite the elements of two separate

---

[5] Plaintiffs do not specifically identify the relief sought under Counts VII–IX. To the extent Plaintiffs seek to enjoin Defendants from accessing the Box Account, such relief is moot for the reasons discussed above. *See* Section I(A), *supra*.

statutory claims under the CADRA (*id.* ¶¶ 128, 130–131, 137, 139).  *See* Section I(C), *supra*.  At this juncture, Plaintiffs' failure to properly plead their CADRA claims is fatal.  *See Jackson*, 898 F.3d at 1358; *Reed*, 2021 WL 2592914, at *10.

Plaintiffs' CADRA claims also suffer from additional pleading deficiencies.  For example, in Counts VII through IX, Plaintiffs conclusorily allege that Defendants violated Florida Statutes § 668.803(1).  To state a claim under Section 668.803(1), Plaintiffs must show that Defendants "knowingly and with intent to cause harm or loss . . . obtain[ed] information from a protected computer without authorization and, as a result, cause[d] harm or loss[.]"  *Id.*; *Kipu Sys., LLC v. ZenCharts, LLC*, No. 17-CV-24733, 2019 WL 7371879, at *7 (S.D. Fla. Oct. 16, 2019).  Yet Plaintiffs' scant allegation that "Swider and Cano conspired to and did obtain information from the Box Account without authorization and, as a result, caused [Plaintiffs] harm in violation of Florida Statutes § 668.803(1)" (AC ¶¶ 128, 137, 145), fails to meet requisite federal pleading standards.  Likewise, CADRA's definition of "harm" mirrors the CFAA's definition of "damage."  *See Nat'l Staffing Sols., Inc. v. Armstrong*, No. 23-CV-1693, 2024 WL 1657193, at *3 (M.D. Fla. Jan. 25, 2024); *see also* Fla. Stat. § 668.802(4) ("'Harm' means any impairment to the integrity, access, or availability of data, programs, systems, or information.").  As fully set forth in Section I(C), *supra*, Plaintiffs' conclusory allegation of harm, without more, fails to "raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555.

The same holds true for Plaintiffs' claims against Cano in Counts VII and VIII for violations of Section 668.803(2), which prohibits "[c]aus[ing] the transmission of a program, code, or command to a protected computer without authorization and, as a result of the transmission, causes harm or loss[.]"  Fla. Stat. § 668.803(2).  Again, Benessere does nothing more than generally state that "Cano transmitted a code in the form of changed access users and passwords

to the Box Account without authorization by deleting numerous Benessere user accounts"[6] and

"creating a user account for Eric Swider" thereby "causing Benessere harm in violation of Florida

Statutes § 668.803(2)." (AC ¶¶ 130–131.) ARC II's allegations fare no better. (*Id.* ¶ 139 (alleging

that "Cano transmitted a code in the form of changed access users and passwords to the Box

Account and ARC II's information contained within the Box Account . . . causing ARC II harm in

violation of Florida Statutes § 668.803(2)").) And, as detailed above, Plaintiffs allege "harm"

without specification. At bottom, Plaintiffs' failure to provide non-conclusory allegations setting

forth a short and plain statement of their claims and purported harm suffered warrants dismissal of

Counts VII through IX.

### E.  Count X for Tortious Interference Fails.

In Count X, ARC II asserts a claim against Swider for tortiously interfering with ARC II's

business relationship with its members and investors, arising from Swider's purportedly "false

statements" to ARC II members "regarding whom [they] should communicate with[.]" (AC

¶¶ 150, 153.)[7] To state a claim for tortious interference, ARC II must allege: (1) "the existence of

---

[6] Notably, notwithstanding Plaintiffs' claim that Cano wrongfully removed Natalie Salume—Patrick Orlando's assistant—as a Box Account user (AC ¶¶ 103, 130), Plaintiffs have taken the astonishing position during discovery that Ms. Salume downloaded documents from the Box Account on Defendants' behalf. Despite Plaintiffs' insistence that Defendants downloaded documents from the Box Account without authorization, Plaintiffs refused to identify a single document downloaded until being compelled to do so by the Court. (*See* D.E. 53 at 3.) Then, on November 20, 2024, Plaintiffs finally identified only twenty-two (22) documents downloaded by Defendants allegedly without authorization, the vast majority of which pertain to DWAC and which Defendants had every right to access. (*See* D.E. 45 at 4–5 ("[T]he heart and soul of the case turns on whether Defendants unlawfully accessed the Box account and removed documents they were not authorized to remove, *i.e.*, not Digital World Acquisition Corp. ("DWAC") related documents.").) Recognizing the weakness of their claims, Plaintiffs changed course to claim that Ms. Salume allegedly downloaded 1,126 documents without authorization. Yet Plaintiffs have not advanced a single allegation in the Complaint or Amended Complaint that Ms. Salume (or anyone else) downloaded documents from the Box Account on Defendants' behalf.

[7] This Court previously dismissed the two tortious interference claims asserted in the Complaint. (Order at 18–20.) Benessere's claim for tortious interference "fail[ed] on its face" because "all of

---

a business relationship, not necessarily evidenced by an enforceable contract;" (2) "knowledge of the relationship on the part of the defendant;" (3) "an intentional and unjustified interference with that relationship by the defendant;" and (4) "damage to the plaintiff as a result of the breach of the relationship." *Kenniasty v. Bionetics Corp.*, 82 So. 3d 1071, 1074 (Fla. 5th DCA 2011) (quoting *Magre v. Charles*, 729 So. 2d 440, 443–44 (Fla. 5th DCA 1999)).

ARC II fails to sufficiently allege elements three and four.  At no point does ARC II allege the nature of the business relationships with its investors or how Swider purportedly interfered with them.  Rather, ARC II merely alleges that supposed false statements "caused harm to such relationships[.]"  (AC ¶¶ 153–154.)  Similarly, ARC II fails to allege *any* damages suffered by the interference, which is an essential element of a tortious interference claim.  (*Id.* ¶ 154 (vaguely alleging that "ARC II has suffered damages").)  *See Balesia Techs., Inc. v. Cuellar*, No. 22-CV-62085, 2023 WL 3491214, at *2 (S.D. Fla. May 17, 2023) (Ruiz, J.) (dismissing tortious interference claim where plaintiffs "alleged, in a wholly conclusory fashion, that Defendant's interference damaged the business relationship" and did not "allege, or even suggest, that any *breach* of the business relationship between Plaintiffs and PTI occurred" (emphasis in original)); *see also Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc.*, 987 So. 2d 706, 708 (Fla. 4th DCA 2008).  Given that ARC II has failed to cure the pleading deficiencies with respect to its tortious interference claim, Count X must be dismissed with prejudice.

### F.  Counts XI and XII for Conversion Fail.

In Counts XI and XII, ARC II and Benessere, respectively, assert two new claims against

---

Benessere's allegations . . . relate[d] to Defendants' alleged interference with *ARC II's* business relations" rather than its own investors.  (*Id.* at 19 (emphasis in original).)  ARC II's claim for tortious interference with contract likewise failed because it did "not allege that Defendants induced any investors to breach their contracts with ARC II, as Florida law demands."  (*Id.* at 20.)

"Swider and Cano" for conversion.[8]  The conversion claims are based on Defendants "locking" Plaintiffs out of the Box Account and the purported "confidential business information" therein. (AC ¶¶ 160, 167.)  "Under Florida law, a conversion is 'an unauthorized act which deprives another of his property permanently or for an indefinite time.'"  *Howard v. Gucci Am., Inc.*, No. 23-CV-20886, 2023 WL 3750584, at *4 (S.D. Fla. June 1, 2023) (quoting *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1291 (11th Cir. 2001)).  Thus, to state a claim for conversion, Plaintiffs must allege: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein."  *Special Purpose Accts. Receivable Co-op Corp. v. Prime One Cap. Co.*, 125 F. Supp. 2d 1093, 1099 (S.D. Fla. 2000).

Plaintiffs' conversion claims fail as a matter of law because Plaintiffs failed to plead facts sufficient to establish that Swider and Cano deprived them of their "property permanently or for an indefinite time."  *Howard*, 2023 WL 3750584, at *4; *see also Intertech Trading Corp. v. JP Morgan Chase Bank, N.A.*, No. 17-CV-21091, 2017 WL 7792705, at *5 (S.D. Fla. Aug. 28, 2017) ("A necessary element of a conversion claim is a defendant's refusal to return the property.").  Nor can they.  The Amended Complaint specifically states that Cano "provided Orlando access to the Box Account" on December 4, 2023 (AC ¶ 32), and that Plaintiffs' forensic expert "regained control" of the Box Account and Benessere's email accounts on April 2, 2024 (*id.* ¶¶ 63–65).  As such, because Defendants are no longer in possession of the Box Account (or an any other account for that matter), Plaintiffs' conversion claims must be dismissed.  *See Howard*, 2023 WL 3750584, at *4–5 (dismissing conversion claim with prejudice where plaintiff alleged only a "temporary

---

[8] At the November 13 Status Conference, this Court admonished Plaintiffs for asserting two new claims for conversion.  (*See* Hr'g Tr. at 7 ("I mean, listen, when you come in here and you start to give me state court conversion counts, you don't have a happy district judge Okay. That's not the kind of stuff need to be seen in a claim like this. . . But this just looks to me to be a kitchen sink situation where you are throwing a bunch of these claims out.").)

possession"); *Intertech Trading Corp.*, 2017 WL 7792705, at \*5 (finding that defendant's return of the subject property "fatal to the conversion claim").  For this reason alone, Counts XI and XII are subject to dismissal with prejudice.

Counts XI and XII also fail on two additional grounds.  First, the conversion claims improperly lump "Swider and Cano" together without informing each Defendant separately of the allegations that apply to them.  (*See* Order at 13); *see also Weiland*, 792 F.3d at 1323.  Second, Plaintiffs fail to identify any damages "suffered" as a result of the purported conversion (likely because there none).  *See Twombly*, 550 U.S. at 555.  For all of the foregoing reasons, Counts XI and XII must be dismissed with prejudice.

### G. Count XIII for Civil Conspiracy Fails.

In Count XIII, Plaintiffs assert a claim against "all Defendants" for conspiring to violate the SCA (Count I), CFAA (Counts IV–VI), CADRA (Counts VII–IX), to tortiously interfere "with ARC II's business relationships" (Count X), and to convert Plaintiffs' property (Counts XI–XII). (AC ¶ 174.)  The elements of civil conspiracy are: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."  *Laterza v. JPMorgan Chase Bank, N.A.*, 221 F. Supp. 3d 1347, 1352–53 (S.D. Fla. 2016) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)).

Count XIII fails as a matter of law pursuant to the intracorporate conspiracy doctrine, under which "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy."  *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000).  Stated differently, "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."  *Id.*

Here, Plaintiffs allege that, at all material times, Swider "own[ed] and control[led] Renatus," "Swider devised this scheme to benefit . . . Renatus . . . and himself," Cano was "employed as a consultant by Renatus," and Cano participated "for his own gain and that of Renatus." (AC ¶¶ 6–7, 21, 35, 175.) Given that Swider and Cano are alleged to have acted on behalf of and for the benefit of Renatus, this negates the multiplicity of actors necessary to form a conspiracy. *Prof'l Led Lighting, Ltd. v. Aadyn Tech., LLC*, 88 F. Supp. 3d 1356, 1372 (S.D. Fla. 2015) (dismissing claims for civil conspiracy under the intracorporate conspiracy doctrine).

Moreover, Plaintiffs fail to plead the elements of a civil conspiracy claim. Because there is no underlying wrong for the reasons stated herein with respect to Counts I and IV–XII, there can be no civil conspiracy. *See Raimi*, 702 So. 2d at 1284 ("[A]n actionable conspiracy requires an actionable underlying tort or wrong."). Plaintiffs also fail to sufficiently allege they were damaged as a result of the conspiracy, instead vaguely alleging in rote fashion they "have suffered and continue to suffer damages." (AC ¶ 177); *see also Blatt v. Green, Rose, Kahn & Piotrkowski*, 456 So. 2d 949, 950 (Fla. 3d DCA 1984) ("The gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is done pursuant to the conspiracy and which results in damage to the plaintiff.").

Finally, Count XIII is a shotgun pleading: it fails to identify each Defendant's alleged acts, and it improperly incorporates several theories into a single claim for relief. (AC ¶¶ 173–174); *see* Section I(C), *supra*; *N.Y. Packaging II LLC v. Private D Cap. Grp. Corp.*, No. 22-CV-20276, 2023 WL 2306690, at *4 (S.D. Fla. Feb. 28, 2023) (single civil conspiracy claim premised on "three separate counts"—New York statutory claim, fraudulent inducement, and Florida's Deceptive and Unfair Trade Practices Act—was a shotgun pleading).

For all of the foregoing reasons, Count XIII must be dismissed.

## II.     **Renatus Should Be Dismissed from This Action.**

Separately, Renatus, at a minimum, should be dismissed as a party to this action.  *See* Fed. R. Civ. P. 8(a).  The only claims asserted against Renatus are Count I for violation of the SCA, Count III for aiding and abetting breach of fiduciary duty, and Count XIII for civil conspiracy. Yet, as with Plaintiffs' initial Complaint, there are no "factual allegations in the [Amended] Complaint regarding Renatus's involvement beyond allegations that Renatus benefited from the [purported] scheme[.]"   (Order at 35 (recognizing "the dearth of factual allegations in the Complaint regarding Renatus's involvement")); *see also Hendershott v. Ostuw*, No. 20-CV-80006, 2020 WL 13111216, at *5 (S.D. Fla. Oct. 14, 2020), *aff'd*, No. 20-CV-13991, 2022 WL 2904080 (11th Cir. July 22, 2022) (dismissing defendant from action with prejudice where plaintiff failed to allege "any specific facts about [defendant's] involvement" in violation of Rule 8(a).)  Thus, in the unlikely event that Counts I, III, and XIII survive, those claims as asserted against Renatus should be dismissed.

## III.     **This Court Should Dismiss Plaintiffs' Amended Complaint with Prejudice.**

Despite having leave to amend, Plaintiffs have failed to set forth a single viable claim in their "kitchen-sink" Amended Complaint.  Plaintiffs have not only disregarded this Court's clear instructions regarding the numerous pleading deficiencies identified in their initial Complaint but have effectively pled themselves out of court.  To permit Plaintiffs the opportunity to amend would be futile.  (*See* Hr'g Tr. at 18 ("I am not going to be shocked if the defense comes back and tells me, Judge, there still is insufficient allegations to support all of the elements supporting claims despite you giving an opportunity to amend.")); *see also L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1333 (11th Cir. 2020) (affirming dismissal with prejudice where plaintiff could not

assert a viable claim); *Jackson*, 898 F.3d at 1359 (affirming dismissal of amended complaint with prejudice where plaintiffs failed to cure shotgun pleading).

Nor would it serve the ends of justice to permit Plaintiffs to continue to harass, abuse, and oppress Defendants with costly litigation—which Plaintiffs are well aware lack any basis—by simply allowing Plaintiffs to amend their claims yet again.  *See W. Sur. Co. v. Steuerwald*, 760 F. App'x 810, 814 (11th Cir. 2019) ("[A] district court need not allow a party to amend his complaint '(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile.'" (emphasis omitted) (quoting *In re Engle Cases*, 767 F.3d 1082, 1108–09 (11th Cir. 2014))).  This action should be put to rest once and for all.  The Amended Complaint should be dismissed with prejudice.

## CONCLUSION

For all of the foregoing reasons, this Court should dismiss Plaintiffs' Amended Complaint with prejudice, award Defendants their reasonable costs and attorneys' fees incurred in connection with responding to Plaintiffs' frivolous claims, and grant such other relief that this Court deems just or necessary.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Defendants respectfully request that the Court schedule a hearing on the instant Motion, which is estimated to require approximately one hour, to assist the Court in determining that Plaintiffs' Amended Complaint should be dismissed with prejudice.

Dated: January 3, 2025                    Respectfully submitted,

                                         **DLA PIPER LLP (US)**

                                         */s/ Christopher G. Oprison*
                                         Christopher G. Oprison (FBN 122080)
                                         chris.oprison@dlapiper.com
                                         Tal Aburos (FBN 1010901)
                                         tal.aburos@dlapiper.com
                                         200 South Biscayne Boulevard
                                         Suite 2500
                                         Miami, Florida 33131
                                         Tel: (305) 423-8522
                                         Fax: (305) 657-6366

                                         *Attorneys for Defendants Eric Swider, Alexander*
                                         *Cano, and Renatus Advisors LLC*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on January 3, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Christopher G. Oprison*
Christopher G. Oprison
